All right, our last case for today and for the week is No. 22-12421, Henry Losch v. Experian Information Solutions, Inc. Ms. Rodkiss. Good morning, and may it please the Court. My name is Susan Rodkiss, and I am here on behalf of the appellant, Henry John Losch. Mr. Losch is again before this Court on appeal, this time appealing a jury verdict based on several errors committed by a magistrate judge sitting as the district court that resulted in substantial prejudice to Mr. Losch. I'll refer to this Court's holding in Mr. Losch's first appeal as Losch 1. The magistrate judge's errors fall into several categories. They're interrelated. The magistrate erred in admitting the second amended complaint for the truth of the facts asserted therein. Okay, let's start there. Okay. Aren't there a legion of cases that hold that a complaint constitutes an admission by a party opponent and is therefore admissible against him or her or it? Judicial admissions are normally pleadings like answers. They could be answers to interrogatories, requests for admissions. There are many cases that state that complaints can fall into that category as well. In this case, the second amended complaint was admitted for the simple purpose that Experian said that it would introduce it to show that it was the second amended complaint that Mr. Losch sued Nation Star as well. This seems to, having sat as a trial judge before, this is the impression I got. Mr. Losch should have admitted that he had sued Nation Star. If he didn't remember once he saw the complaint, he should have admitted that he sued Nation Star. And once he said no to both of those things, he opened a huge door that Experian just ran through and they decided, I'm putting in the complaint because that shows that he sued Nation Star. And you know what? Once that complaint comes in, it's in for everything and they were able to use it against Mr. Losch to his detriment and to their benefit. That's what I think happened in this case. It was unfortunate for Mr. Losch and favorable for Experian, but they used the evidentiary rules to their advantage to drive a truck through a small little hole and the jury obviously or maybe thought something of that. Same thing with regards to the bankruptcy filings and the district court's refusal to let Mr. Losch, excuse me, not the bankruptcy filings, the testimony, the proposed testimony by Mr. Losch about other CRAs not having made the same error. There was nothing ever very clear about exactly what he would say and how much depth he would go into about those CRA reports. And so, I'm not sure the district court got it right in saying that it wasn't relevant, but Experian objected also on hearsay grounds. The district court didn't reach those grounds, but why wasn't his testimony about the CRAs hearsay? I'd like to take the hearsay, Mr. Losch's testimony about the other CRAs first and then address your questions about the second amended complaint, if that's all right with you, Judge. Sure. Okay. Mr. Losch's testimony was proffered for the purpose of showing that he only disputed to Experian. He only disputed to Experian because he personally observed that the other two CRAs, Equifax and TransUnion, had not reported the Nation Star trade line as due unknowing. That's not the only reason you wanted that in. You wanted that in. Everybody's using the federal rules of evidence to their advantage. They have to satisfy them, but then once something is in, they use it for all their worth. And what I think happened here, again, I'm trying to play out what happened at trial. If that's the purpose, once that testimony's in, Mr. Losch is also going to use it to argue that Experian behaved unreasonably in its investigation because here you have two CRAs that did some reasonable investigation and got it right. Well that's a natural argument that would be made from the fact that the other two CRAs did not receive disputes from Mr. Losch and the jury could reasonably conclude that. I agree. And it's not hearsay because it's something Mr. Losch personally observed and he personally did. What did he personally observe? That the other two CRAs had not reported an inaccurate trade line. Had not reported something. But that's got to be based on the content and truthfulness of that report, is it not? Well nobody has to see the report. The reports were not being offered. It was just Mr. Losch's conduct. How do they cross-examine him on that point? Well, that's Experian's prerogative to cross-examine somebody on that point. How? How do you know, Mr. Losch, that those CRAs got it right? Because I read their reports and their report said that this debt was discharged in bankruptcy X, Y, and Z. And where does that come from? The content of the report. Mr. Losch's testimony was being offered for his conduct. Things that he personally observed and actions that he personally took. Can I ask a question? Yes, Judge. Maybe I misunderstood, but in Losch 1, I thought that it was, there had been sort of a determination that the reports were factually, Experian's report was factually inaccurate. Not because it showed that the debt hadn't been discharged, but really because it included information in it that it reported not just the existence of a debt, but it actually reported things that were factually inaccurate, i.e. that there was a balance due, that there was a past amount due, and that it had been due or past due for 180 days. And that, at the time of the report, that was all factually inaccurate. That's correct, Your Honor. However, this court also reached the conclusion that it was unquestionable that the Nation Star debt had been discharged. And that was basically beyond question in Losch 1. This court also found that Experian never, ever consulted the bankruptcy records when it reported the debt. I want you to address the bankruptcy records, because I don't really understand how that the bankruptcy records came in, because Experian admitted to never looking at the bankruptcy records. So, explain to me exactly how that happened then. The magistrate judge committed a pretty serious error when he admitted these bankruptcy records. This court in Losch 1 held that Experian never looked at them, they never used them in reporting or in re-investigating, and Experian testified to that at trial as well. They admitted they never, ever looked at the bankruptcy records. Why were the bankruptcy records then introduced and discussed? Because I think they went through them pretty, I mean, it wasn't just like a one question that was asked by Experian's counsel, I mean, it was a lot of questions. Well, that's right. Experian stated to the court that they were going to use the records simply to form the factual predicate of the case. But again, what is the point, what was the argument made for it? Because I don't understand how the bankruptcy records, why the bankruptcy records were introduced when they admitted that they never looked at the bankruptcy records. The question really should have been just what was the re-investigation that they did once they got notification from Mr. Losch that there was an alleged error in the consumer report. It was a serious error for the magistrate judge to allow these bankruptcy records and also to give a jury instruction regarding the bankruptcy records and regarding the two our objection is that it wanted to create suspicion and confusion and mislead the jury into whether the bankruptcy had actually been discharged in direct contravention of this court's ruling in Losch 1. It wanted to show that it was Mr. Losch's counsel that had caused Experian to inaccurately report the trade line, that Experian's counsel, I mean, I'm sorry, that Mr. Losch's counsel had made a mistake, that the discharge maybe hadn't really occurred because it was outside the 60-day window in the statute, even though that's in direct contravention of this court's ruling. And who testified to that, that the discharge had not occurred? Well, that was mainly argument at the argument stage. But throughout the case, Experian's counsel raised the issue, asking Mr. Losch about his bankruptcy. So, Mr. Losch was examined on these issues that happened many years before, including the filing of the second amended complaint, asking a plaintiff whether they knew who had been settled years before the trial occurred. But the Experian's counsel routinely referenced bankruptcy counsel as bungling the case and also showing that trial counsel was the same firm as bankruptcy counsel, alluding to making mistakes in the trial court, I mean, in the bankruptcy court, so that it was really counsel that caused this quagmire, as Experian's counsel argued in their closing arguments to the jury. They went so far as to putting up some of the bankruptcy documents on the electronic publication system and highlighting the name of trial counsel's law firm to improperly prejudice the jury against Mr. Losch and disparage trial counsel. This court has disapproved of disparagement of trial counsel. It is cause for reversing a jury decision. It's not only distasteful, but it's reversible error. So that was one of the reasons for introducing the bankruptcy records, was to show that it was really counsel that had caused Experian to misreport or falsely report the Nation Account. I haven't read the file transcript yet, but tell me what Experian's closing argument was in terms of conducting a reasonable investigation. What was the theory presented to the jury? Experian, and maybe you're getting to the burden of proof question, and Experian really didn't talk about how reasonable their investigation was. Instead, their arguments were that they couldn't have done anything. They would have had to make a wild guess in order to correct the Nation Star account. They wouldn't be able to overturn the automated verification that they had sent to Nation Star that verified the report, and that there was no way they could have possibly understood what happened to the Nation Star account to find that the debt had been discharged. They also argued that Mr. Losh didn't do enough to trigger a reinvestigation that would have brought them to this conclusion. They improperly argued that he should have sent a second dispute with more information and with more explanation, and that's improper, and that's the reason why that jury instruction was never given in Brim v. Midland Credit Management, that the plaintiff had a duty to mitigate their damages when the argument really was they had a duty to do something extra to mitigate Experian's failure to conduct the reinvestigation. So Experian really never came forward showing the reasonableness of their procedures. Instead, they showed that there was really no way they were ever going to be able to correct this and that it was really counsel's fault and Nation Star's fault for Experian falsely reporting the Nation Star account. Okay, Ms. Rockus, thank you very much. You saved your time for rebuttal. Thank you. Mr. Johnson. Good morning, Your Honors, and Mr. Jeff Johnson on behalf of Experian. May it please the Court. Judge Legault, I wanted to start with your question about why did the bankruptcy records come in if it's acknowledged as it was before this Court in Losh 1 that Experian did not in fact check? I think the reason for that is actually quite straightforward and dovetails with Experian's closing argument, which was the statute requires us to adopt reasonable procedures designed to ensure maximal accuracy. To figure out whether procedures are reasonable, as this Court held in Losh 1, it knew the matter of law either way. We can't tell that it was reasonable to not look and to just ask the furnisher. We can't tell that it wasn't reasonable to not look and just ask the furnisher. And so what Experian showed was exactly how complicated this bankruptcy was to show what would happen. But that doesn't make any sense. That's basically like an insurance company doing a remedial measure and that's disallowed under the rules of evidence after the fact. You can't do something. You can't say, oh, I'll take a look at it now and if I had taken a look at it, it wouldn't have helped me anyway. The question and the reason this was sent back was for a jury to find if Experian was negligent in discharging its obligation to conduct a reasonable investigation and reinvestigation into the disputed information. The question is, at that moment in time, when Mr. Losh contacted Experian, what was the investigation or reinvestigation that Experian did and were your procedures in place at that time, not after the fact, were they reasonable and what did you do? So how can you possibly introduce bankruptcy documents that you never looked at at the time? Because those documents are illustrative of the reason why Experian has the policy that it has to say, look how complicated this kind of bankruptcy can be. There's no single document that you can look to on that bankruptcy and you certainly can't just look to the docket to find out what happened to the mortgage. The question was in Losh 1 that was made very clear by Judge Newsom was that there was not just inaccurate information about the discharge because as the court said, the issue here was not, it doesn't involve a legal dispute about the validity of the underlying debt. There was factual information that was inaccurate, i.e., the balance owed. There was no balance owed. He was not late on payment. So all that information was incorrect. So what did Experian do as a reasonable reinvestigation to determine the validity of that information that Mr. Losh was contesting? So let me start by reading from this court's decision in Losh 1. And this is on page 947 of 995F3rd. To be clear, our holding is a narrow one. Just as we cannot hold that Experian's procedures were per se reasonable, we do not hold that they were per se unreasonable. So this court fully aware of the fact that Experian did nothing more than ask NationStar about the information. That's right. And in fact, it said Experian, it did nothing. Although it could have easily done something with the information that Losh provided, an account number, a discharge in bankruptcy, and an explanation of his rescission of the reaffirmation. On those facts where Experian didn't even check the bankruptcy docket, a jury could find that it was negligent in discharging its obligations to conduct a reasonable investigation and reinvestigation into the disputed information. Yes. And obviously, that is why it was sent back for a trial. Indeed. A jury could find on those facts that just asking the furnishers... But how would it be relevant for a jury to look into what the bankruptcy docket said when your client didn't even bother to look at the bankruptcy docket? Because those documents show vividly why we have the policy of not looking in case... But then why did the other two credit reporting agencies, TransUnion and Equifax, didn't report incorrectly? They reported correctly. So, there is no record evidence on that point. The plaintiff tried to testify... There's a proffer of excluded evidence. There's a proffer of a statement from the plaintiff that I would have testified that I read this document... That's a proffer. ...that showed this. Yes. I'm not disputing that there wasn't a proffer. I think, Judge Jordan, your questions this morning made very clear that there are two reasons why that proffer was properly excluded. And again... It was only excluded based on relevance. It was not excluded based on hearsay. There's also a 403 exclusion. You ruled on both relevance and 403. I don't buy the relevance argument, even under an abuse of discretion standard. Okay. So, let me... It's clearly relevant. It may have other problems, but the fact that other CRAs were able to investigate and got this right is certainly relevant, probative to the issue of whether or not Experian acted reasonably in this case. Relevance is a very broad concept. Let me just start first and say, of course, the plaintiff has to prevail on both grounds. They have to show abuse of discretion on 403. I think that's essentially unchallengeable in the sense that... And it leads into the relevance discussion where, in order to make that testimony relevant, you have to show two things. One, you have to show that those other reporting agencies received the same information about the account. No, you don't. No, you don't. You don't have to prove... There's no foundation for that inference. No. You make that argument to the jury later, the same way you argued all sorts of inferences in your closing argument. Come on. So, at the very least, that shows why his 403... That would have been very harmful evidence to you. Now, maybe it was properly excluded, but that evidence would have harmed your defense to the hilt because they would have been able to put up to the jury, here's TransUnion, here's X. They got it right and Experian did nothing and they got it wrong. And boy, you would have had a tough time at closing to explain that your client acted reasonably. And I would note that when the court made the point about how that would be harmful evidence to Experian, what Your Honor did was hold up a document. And that is exactly what they should have done if they wanted to introduce this evidence of what a report said, was to lay the foundation for it and introduce the report. So the judge properly excluded this on that ground. It was excludable as a hearsay. It's also analogous, I think, a little bit to the best evidence rule. You're not usually allowed to testify about the content of a document without producing the original of the document. And then, again, the 403. So there was no evidence that the other agencies were correct. Here's an easy way for this to have come in without there being any evidentiary problems. You ask Mr. Losch, did anybody else incorrectly list your debt? No. Not hearsay. It was just asked the wrong way and presented the wrong way. But if this thing was presented the right way to a judge, this thing's coming in. So I don't have a strong position on that. But, Your Honor, as you mentioned earlier this morning, the rules of evidence are the rules of evidence. And the parties litigate their cases under an adversarial system. It may be that there was a way for the plaintiff to ask the question to the plaintiff's witness that would have got the materials in. The plaintiff chose not to do so. And now we are under one of the law's most protective standards, the Abuse of Discretion Standard, for setting up a jury verdict for evidentiary errors. And so, Judge Legal, I don't know if you have any further questions on the bankruptcy records or that. Just to hit a few of the points. I want to make sure I understand the case. Everybody agrees you never looked at the bankruptcy records, right? Correct. And everybody agreed your rule was you didn't look at the bankruptcy records? Yeah, at least in cases like this one. And so the whole issue for the jury was whether that policy is reasonable. Exactly what this court said in the lowest law. And so you introduced the records, not so much to say, look what we did as a causation so much here as what would happen in this case. It was more of this is a typical. If we go look over in the bankruptcy court, this is you find a mess. So we're just trying to show our rule, excuse me, policy, which we followed. And everybody agreed to, that was the policy, and you followed it, was a reasonable policy. Exactly. That was what it was admitted for, not for anything other than evidence of why our policy is reasonable. Right. We thought that this case, this bankruptcy was exhibiting. There was some relevancy of that bankruptcy records. to your position that your rule, policy, whatever, was reasonable. Exactly. Okay, so I got it. You don't have to go into it. I just want to make sure I got it. So then sort of a few of the additional points that my friend on the other side said. She suggested that we introduce the reports to argue about accuracy. And that's simply false. We did not challenge the accuracy of the report. The jury was instructed that the reporting was inaccurate. And the jury found in question one on the verdict form that we had published inaccurate reports. And so the idea that the jury thought or that we suggested that the reporting was accurate is just not true. Why is there a duty to mitigate under the FCRA? I think the duty to mitigate is sort of a background tort concept that applies to all causes of action, unless Congress is very clear that there's not. Now, of course, I guess the first thing I would say about the duty to mitigate here is this question is almost entirely academic in this case. The duty to mitigate is only triggered and only relevant by, as the jury verdict form reflects, when you find liability and damages. And, of course, in this case the jury never got to those. Except that you argued as part of this that he should have done more. No, we argued that he should have mitigated. Not that he had a duty under this FCRA to do so. You skirted a very, very fine line. You or whoever tried the case skirted a very, very fine line. And it may not be a reversible error, and you at the end of the day may walk out of here with an affirmance. You guys skirted the evidentiary lines to argue everything for whatever it was worth. And you got a duty to mitigate instruction. It was going to be in front of the jury. And then you argue that he didn't do enough and he should have sent another letter. The other letter was not about mitigating damages. It was to get you to do something and investigate further. So let me just push back a little bit on that, Your Honor, and say, of course we're not saying that he has a duty. If I'm on the way back to the hotel today, I'm hit by a car. And I choose not to go to the hospital because I don't like hospitals. They're awkward places. It's uncomfortable. And I just decide I'm just going to take my chances. And then I later sue my tortfeasor and I say, you owe me not only for what would have happened had I gone to that hospital, but what would have happened because I didn't go to the hospital. It's not because I have a duty to go to the hospital. It's just because the tort law says once you've been injured by someone and their negligence, you need to act like a reasonable person would to try to stop future injury. But what Mr. Losch, he called you. He notified Experian that the information was incorrect. We don't think the duty to mitigate was triggered until after we had told him we think, you know, we think this is good, go about. And the thing that we think that he could have done to mitigate and what there was evidence for to suggest was, I guess, two things, maybe three. First, the FCRA uniquely, as this court has said, allows people, consumers, to put on their report their own hundred-word statement about what happened with a disputed debt. If you take advantage of the opportunity, you can diminish some of the harm you face from inaccurate reporting by putting your side of the story out there. He didn't do that. You can also, you know, call in, provide new records, try more. None of this is that he has a duty to do any of that. All this is to say once you've suffered damages and Mr. Losch testified that this, you know, hurt him and his family, once you've suffered that, the law says we get that, we understand, you can seek compensation for that, but you must take reasonable steps to protect yourself from future damages. So, and again, this is an abusive discretion standard for where this instruction was properly given. Because the jury never reached it, it can't possibly be prejudicial. And I guess I have a few more minutes. There's just one other thing to hit before, and of course, if there's any questions, this idea that we wrongfully, that we disparaged counsel. I don't think that that is what happened here. Why did you have to point out that the trial counsel who represented him in bankruptcy was the same one that represented him at trial? One reason was that it's just a brute fact of the case. The bankruptcy docket. Why does it matter? So the first time it comes up, there's no objection. It only is objected in the closing. I'm not asking about objection. Okay. I'm asking about why it's relevant. We think it's relevant because competent counsel, again, this goes back to the procedures point. Very competent counsel has a difficult time navigating all the bankruptcy rules. The question in this case is, is Experian reasonable for saying, instead of having our agents... Which argument would have been the same even if it had been a different counsel? We agree. You would have made the same argument. There's no reason to link the two. Like I said, my personal view of the case is that you guys skirted very close to the line on a ton of issues. But you've got the abuse of discretion standard, and maybe it will save you at the end of the day. There's no reason to have linked those two things except to throw a little shade at the lawyers who are representing Mr. Losh in this case. Your Honor, I wasn't there. I stand by and defend. I'm not blaming you or anybody else. I'm just saying that the lawyers who represented Experian at trial, in my personal opinion, I only speak for myself, had no reason to link his current trial counsel with his bankruptcy counsel. If that's so, Your Honor. Especially when your policy was we don't look at this stuff. It's not that we don't look at this stuff because these lawyers were so bad that they made a mistake that we could have never uncovered. That wasn't your point. Your point was we don't look at this stuff because it's tough, it's messy, it's complicated, and we may not be able to figure out the right answers. And if that's your policy, and if that policy is reasonable, it doesn't matter who trial counsel is, and it also doesn't matter whether they would have gotten the discharge immediately without having to file a motion to set aside. Your argument would have been the same one no matter what the circumstances were. It has to be that way because your policy is a do-nothing policy. Our policy is not to do nothing. Our policy is to ask the person with the most information about the incident. Which you have to do statutorily. Agreed, Your Honor. But then to do nothing when you get a letter that tells you it's wrong. Correct. Depending on the contents of the letter, of course. There's a huge amount of trial testimony about how different policies are triggered depending on what the letter says, what things are going on there. I guess just to close on that last point, Your Honor, this was an adversarial trial. Plaintiff got in as many punches as we got in from the rules of the evidence. And there were issues that they won, issues that we won. And that's how the system works in a trial. I would just point out that the decisions that reverse for disparagement of counsel, that is an exceptionally high bar. Because adversarial litigation and trial, it is adversarial. It is combative. The system is designed that we zealously push for our clients' interests and they zealously push for their clients' interests. That's true, but you're still officers of the court. We are officers of the court. And you always advocate zealously for your client but within the bounds of professionalism. We 1,000% agree, Your Honor. And my colleagues at trial here did that. When there was objections raised, when the court said you couldn't do something, they abided by that. The court, you know, they had sidebars about these kinds of things. This was not a case where the example that they give reversal for disparagement of counsel are things like repeated discussions throughout the entire trial about how plaintiff's counsel is engaged in a conspiracy with the plaintiff to bring frivolous lawsuits throughout the whole trial. That's the level that it gets. I also would, you know, encourage, I did some, you know, some work on some tobacco. There's a lot of case law about when you can get reversal for prejudicial comments. And isolated statements tying the Price Law Group to the same case to show how bankruptcy lawyers, even good ones, can get these things confused. And it's a complicated area to show why a procedure is reasonable is not the basis for overturning the jury's verdict in this carefully and hard-fought case. All right. Thank you very much. Thank you. I just want to make one point in response to counsel's response. Throughout the trial, Experian disparaged trial counsel. Over our objection, the court allowed it. Experian accused counsel and Mr. Losh of obtaining money from Nation Star and that there was only one reason for pursuing the case against Experian, and that was greed. To get that last bit of gravy, he said. But, you know, that may have skirted close to the line, but defense lawyers argue that a lot in cases. That this case is about greed and it's about money and you're targeting a defendant who has no fault and don't let them hoodwink you. Why isn't that, you know, tough but fair litigation? I don't have any issue. I don't think I have any issue with that comment. I mean, defendants do that all the time. The guilty people are here, not here, not my client. It's them. True, Judge. However, the cases that he says are disparate from this case are when trial counsel was disparaged by opposing counsel throughout the case, and that's what happened here. And when you read the trial transcript, you'll see that we point out to it numerous times in our brief. And so in a limited circumstance that something was, you know, the object of the plaintiff's greed, that is, I think, fair game. I think you're right. But taken in context of the entire trial and that over our objection, the court continued to allow it, we think that that falls into the 11th Circuit's guidance that that sort of disparagement of counsel is reversible because it creates too much of a question and prejudices the jury too much against the plaintiff. And that's all I have. Thank you. Thank you very much, Ms. Rockett. Thank you very much, Mr. Johnson. We are in recess. Bye-bye.